UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No.: |
| v. | : Filed: |
| | : |
| STEPHEN SHERIDAN, | Violations: 18 U.S.C. § 1349 |
| | :                 26 U.S.C. § 7206(1) |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## INFORMATION

The United States of America, acting through its attorneys, charges:

1.     STEPHEN SHERIDAN ("SHERIDAN") is hereby made a Defendant on the charges stated below.

## COUNT ONE -- CONSPIRACY
### (18 U.S.C. § 1349)

### I.  THE RELEVANT PARTIES AND ENTITIES

During the period covered by this Count:

2.     SHERIDAN resided in Valley Cottage, New York.  SHERIDAN was the owner of a construction and development company and the co-owner of a flooring and construction company.  From approximately April 2002 to August 2007, SHERIDAN was employed as a Senior Investigator by the New York Power Authority (hereinafter "NYPA"), at its offices located at 123 Main Street in White Plains, New York (hereinafter the "White Plains Facility").

3.      "CC-1" was a co-conspirator who owned Company-1, a construction services company.  Company-1 was a New York corporation located initially in Valley Cottage, New York.  In approximately September 2010, Company-1 relocated to Bardonia, New York.   Among other things, Company-1 was in the business of providing masonry, landscaping and snow removal services at NYPA's White Plains Facility. SHERIDAN provided instructions and assistance to CC-1 in the management of Company-1 with respect to work Company-1 received and performed at NYPA's White Plains Facility.

4.      Various other persons and companies, not made defendants herein, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

## II.  BACKGROUND

5.      NYPA is the largest state public power organization in the United States. NYPA provides some of the lowest-cost electricity in the nation, operating 16 generating facilities and more than 1,400 circuit-miles of transmission lines.  Its main administrative offices are located at the White Plains Facility.  NYPA's customer base includes large and small businesses, not-for-profit organizations, public power systems and government agencies.

6.      NYPA maintains a bidding policy to the effect that (a) at least three bids shall be obtained for all purchases where the value of the contract is at or below $25,000,

and (b) at least five bids shall be obtained for all purchases where the value of the contract is over $25,000.

7.      On certain contracts, NYPA requires its contractors to pay the prevailing wage rate.  Among the contracts subject to this requirement was the contract for masonry, landscaping and snow removal services awarded by NYPA for the White Plains Facility in 2009.

8.      "Prevailing wage rate" is generally defined as the rates of wages and supplements determined by the New York State Commissioner of Labor as prevailing in the locality of the site at which the work will be performed.

## III.  DESCRIPTION OF THE OFFENSE

9.      From at least as early as September 2009 and continuing until at least August 2012, the exact dates being unknown to the United States, in the Southern District of New York and elsewhere, SHERIDAN and his co-conspirators, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States of America, to wit, to violate Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1349.

10.     It was a part and an object of the conspiracy that SHERIDAN and his co-conspirators, and others known and unknown, unlawfully, willfully and knowingly, would and did devise and intend to devise a scheme and artifice to defraud NYPA, and to obtain money and property from NYPA by means of false and fraudulent pretenses,

3

representations, and promises, and for the purpose of executing such scheme and artifice, and attempting to do so, would and did transmit and cause to be transmitted in interstate commerce by means of wire communications certain writings, signs, signals and sounds in violation of Title 18, United States Code, Section 1343.

## IV. THE MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

11.     In approximately September 2009, SHERIDAN advised CC-1 to submit a bid in response to a Request for Quote ("RFQ") posted by NYPA on the New York State Contract Reporter website.  The RFQ solicited competitive bids, pursuant to NYPA's bidding policy, for a three-part contract to perform masonry, landscaping and snow removal services at NYPA's White Plains Facility.

12.     NYPA's procurement department was responsible for, among other things, the competitive award of contracts to outside vendors, including the contract to perform masonry, landscaping and snow removal services at NYPA's White Plains Facility for which an RFQ was issued in approximately September 2009.

13.     Pursuant to NYPA policy, the RFQ issued by NYPA's procurement department required bidders to submit a certification that they would pay employees at the prevailing wage rate.

14.     SHERIDAN assisted CC-1 in the preparation and submission of Company-1's bid.  Among other things, Company-1's bid included a certification that Company-1 would pay employees the prevailing wage rate as required by the RFQ.  Company-1 submitted its sealed bid to NYPA on or about October 13, 2009.

15.     On or about October 29, 2009, NYPA issued a purchase order awarding all three portions of the contract—masonry, snow removal, and landscaping—to Company-1.  The contract was for five (5) years and the award amount was $3 million.

16.     The terms of the NYPA contract included the requirement that Company-1 pay the prevailing wage rate to its employees.  The contract further required that, in order to be paid for the labor provided, Company-1 was required to submit monthly certified payroll statements to NYPA, which included the names of the Company-1 employees who performed work at NYPA during that time period, the number of hours they worked and the hourly prevailing wage rate for each employee.

17.     Once the contract was awarded, however, SHERIDAN and CC-1 did not pay Company-1 employees who performed work under the contract the prevailing wage rate as required by the contract.  Instead, SHERIDAN and CC-1 paid Company-1's employees in cash in amounts substantially less than the prevailing wage rate.

18.     In order to conceal these underpayments, CC-1, with SHERIDAN's knowledge and assistance, submitted false and fraudulent certified payroll statements and invoices from Company-1 to NYPA, which included requests for payment at the prevailing wage rate for individuals who had been paid in cash at substantially less than

the prevailing wage rate.  These false and fraudulent certified payroll statements and invoices also included requests for payment at the prevailing wage rate for individuals who performed no services whatsoever on behalf of Company-1 at NYPA's White Plains Facility (the "No Show Employees").

19.     SHERIDAN provided CC-1 with the names, addresses and social security numbers of the No Show Employees that either he or, at times, CC-1 identified on the certified payroll statements Company-1 provided to NYPA.

20.     Between approximately December 2009 and August 2012, Company-1 submitted approximately 195 false and fraudulent invoices to NYPA.

21.     Between approximately December 2009 and May 2011, payment by NYPA to Company-1 on the false and fraudulent certified payroll statements and invoices submitted by Company-1 were made by checks issued from NYPA's bank account. These checks were cleared through interstate wires.  Between approximately June 2011 and August 2012, payment by NYPA to Company-1 on the false and fraudulent certified payroll statements and invoices submitted by Company-1 were made by electronic wire transfers from NYPA's bank account into Company-1's bank account.

22.     On each occasion after Company-1 received payment from NYPA based upon the false and fraudulent certified payroll statements and invoices it provided, CC-1 caused Company-1 checks made payable to the No Show Employees to be provided to SHERIDAN, who, in-turn, negotiated those checks.

23.     Pursuant to this scheme, from October 2009 until at least August 2012, a substantial portion of the prevailing wages paid to Company-1 by NYPA was not paid to the Company-1 employees who performed the work.

24.     At no time did SHERIDAN or CC-1 or any of their co-conspirators disclose these fraudulent activities and their relationships with one another to NYPA.

## V.  OVERT ACTS

25.     In furtherance of the conspiracy, and to effect the illegal objects thereof, SHERIDAN and his co-conspirators, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York, and elsewhere:

(a)  On numerous occasions, between approximately December 2009 and August 2012, CC-1, with SHERIDAN's knowledge, submitted false and fraudulent certified payroll statements and invoices to NYPA which substantially overstated the labor costs incurred by Company-1 during the period covered by those certified payroll statements and invoices;

(b)  On numerous occasions, between approximately January 2010 and May 2011, Company-1 received payment by check from NYPA based on the false and fraudulent certified payroll statements and invoices Company-1 submitted to NYPA;

(c)  On numerous occasions, between approximately January 2010 and May 2011, SHERIDAN and CC-1 caused Company-1 to deposit the checks from NYPA referenced in subparagraph (b) above into Company-1's bank account located in the

Southern District of New York, which checks were cleared by an interstate wire communication between financial institutions; and

(d)  On numerous occasions between approximately January 2010 and May 2011, CC-1, after depositing NYPA's payments into Company-1's bank account provided, or caused to be provided, to SHERIDAN, from funds in Company-1's bank account, checks made payable to the No Show Employees of Company-1.  SHERIDAN would negotiate those checks and retain a portion of the cash for his own personal use.

IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1349.

### COUNT TWO -- FALSE SUBSCRIPTION
(26 U.S.C. § 7206(1))

The United States of America, acting through its attorneys, further charges:

26.     SHERIDAN is hereby made a defendant on the charge stated below.

27.     Paragraphs 1 through 8, and 11 through 25 of Count One of this Information are repeated, re-alleged, and incorporated in Count Two as if fully set forth in this Count.

28.     On or about February 8, 2012, in the Southern District of New York and elsewhere, SHERIDAN unlawfully, willfully, and knowingly did make and subscribe to a U.S. Individual Income Tax Return, Form 1040, for the tax year 2010, which was verified by a written declaration by SHERIDAN that it was made under penalties of perjury, and which income tax return he did not believe to be true and correct as to every

material matter, in that Line 43 reported $48,066 as "taxable income," whereas, he then and there well knew and believed that Line 43 substantially understated his true taxable income, in violation of Title 26, United States Code, Section 7206(1).

IN VIOLATION OF TITLE 26, UNITED STATES CODE, SECTION 7206(1).

Dated:   3/25/16

WILLIAM J. BAER
Assistant Attorney General

BRENT SNYDER
Deputy Assistant Attorney General

MARVIN N. PRICE, Jr.
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

PREET BHARARA
United States Attorney
Southern District of New York

JEFFREY D. MARTINO
Chief, New York Office

STEPHEN J. McCAHEY
Assistant Chief, New York Office

MARY ANNE F. CARNIVAL
HELEN CHRISTODOULOU
MILOSZ GUDZOWSKI
STEPHANIE RANEY
Attorneys, Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Room 3630
New York, New York 10278
(212) 335-8011

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

-v-

**STEPHEN SHERIDAN,**

Defendant.

---

**INFORMATION**
**15 Cr.**

---

**PREET BHARARA**
**United States Attorney for Southern District of New York**
**(914) 993-1900**